No. 56.—STATE OF LOUISIANA *v.* JOHN J. KREIDER.

The plea of *lis pendens* will not be maintained where it is shown that a suit by mandamus has been brought in the name of the State on the relation of a claimant for office, and is still pending, and another suit has been brought in the name of the State by the District Attorney joining the same claimant for office as in the mandamus suit under the acts of the Legislature of 1868, numbered fifty-eight and one hundred and fifty-six, providing a remedy against usurpation and intrusion into office. In the mandamus suit the State is merely a nominal party, and in the suit brought under these acts of the Legislature the State is the actual real party in interest wherein the right to hold the office is the principal subject of inquiry. Want of identity of parties and not having the same objects in view operates as a bar to the plea.

The thirteenth section of the act of September 14, 1868, repealing the charter of the city of Jefferson, approved March 8, 1867, did not abolish the offices of the corporation. This clause only repealed the old charter in so far as its provisions were not incorporated in the new charter.

The failure to hold an election for municipal officers of the city of Jefferson on the first Monday of January, 1869, as provided in section three of the amended charter, adopted September 14, 1868, did not vacate the offices which were filled by election under the charter of 1867.

The appointment to an office by the Governor is void if there was no vacancy at the time the appointment was made.

APPEAL from the Second Judicial District Court, parish of Jefferson. *Pardee,* J. *Z. McKay,* District Attorney, *Lacey & Butler, J. Hawkins* and *L. A. Sheldon,* for plaintiff and appellee. *A. N. & H. N. Ogden, Fellowes & Mills* and *Cazabat & Scott,* for defendant and appellant.

TALIAFERRO, J. This suit is brought under the act of the Legislature approved October 15, A. D. 1868, for "providing a remedy against usurpation, intrusion into, or the unlawful holding or exercising a public office in this State." Under the act of the Legislature of the eighth of March, 1867, entitled "an act incorporating the city of Jefferson," the defendant was elected Mayor of the city and was discharging the duties of that office when the Legislature passed the act approved by the Governor on the fourteenth of September, 1868, entitled "an act for revising and amending the charter of the city of Jefferson." The third section of that act required an election to be

State of Louisiana v. John J. Kreider.

held on the first Monday of January, 1869, and every two years thereafter for Mayor, Treasurer, Controller and Aldermen, the several officers aforesaid to enter upon the discharge of the duties of their respective offices on the third Monday following their election. The fourth section of that act provides " that the Governor shall, upon the passage of this act, remove the present board of aldermen and other officers of said city and appoint the Mayor, Treasurer, Controller and Aldermen until the aforesaid officers shall have been elected and qualified as in accordance with section three." The Governor did not upon the passage of the act revising and amending the charter of the City of Jefferson remove and appoint as provided for according to section four, but permitted matters to remain in *statu quo* until January, 1869, at which time, as provided by the amendatory act of 1868, an election was to be held. No election however was held at the time fixed nor has an election been held since. There being no election held the Governor proceeded to appoint and commission F. J. Leche Mayor of the city, as in case of a vacancy in the office. Kreider, the defendant, refusing to yield the office to Leche and to turn over to him the paraphernalia appertaining to the office, Leche applied to the District Judge of the district for a writ of mandamus requiring Kreider to recognize him as Mayor of the city of Jefferson and to deliver to him the books, records, personal property, etc., belonging to the office, or show cause to the contrary at the time and place fixed by order of the Judge.

On the trial the judge dismissed the demand of Leche to be recognized Mayor on the ground that upon the application for a writ of mandamus the right to an office could not be inquired into, but decided that the proceeding so far as it aimed to place Leche in possession of the appliances of the office was well taken and to that extent the rule was made absolute and a peremptory writ of mandamus was ordered to issue.

From the judgment thus rendered Kreider took a suspensive appeal which is now pending before this court. At this stage of the proceedings the present action was instituted by the plaintiff under the acts of the Legislature passed in the year 1863, numbered fifty-eight and one hundred and fifty-six, providing a remedy against usurpation and intrusion into office.

Kreider excepted upon the following grounds :

*First*—*Lis pendens* relying upon the proceedings for a mandamus to sustain that plea.

*Second*—That the right to a municipal office cannot be tested under the usurpation and intrusion acts.

The judge *a quo* having overruled the exception and rendered judgment upon the merits, declaring Leche to be entitled to the office of Mayor, the defendant appealed.

We will first examine the plea of *lis pendens*. In the mandamus case the controversy is one simply between individuals, although nominally carried on in the name of the State on the part of the complainant. In the other case under what is usually termed the intrusion act it is clear the Legislature intended to remedy an evil prevailing to no small extent, that of the frequent altercations arising from conflicting pretensions to the right of holding office. The grave maxim *interest Republicae ut set finis litium* seems to be at the foundation of this litigation. Hence the State itself takes the initiative, and in the name of the people of the State, the Attorney General is authorized, even upon his own information, to bring actions in the cases specified in the act. It is intended that the State shall be the proper party in interest, to the end that there shall be no interruption or suspension of the functions of the public officers, that delays in the administration of justice shall be prevented and that the duties of the public functionaries shall be regularly and without interruption performed. In all actions brought in contemplation of this act the name of the complaining party if there be one, is joined with that of the prominent plaintiff the people of the State, but the interests of such party in actions brought under this act are deemed of secondary importance. Hence from want of identity of parties in the two cases the plea of *lis pendens* fails. The State in the one case is the actual real party ; in the other merely a nominal party.

The objects of the suits were not the same. In the mandamus suit we sustained the views of the defendants, who then contended that the question of office was not involved in that suit, and we refused to permit it to be tried by preference. ·

We think the exception was properly overruled.

To ascertain whether the Governor had the right to appoint the relator to the office he claims, it is necessary to determine whether the several offices under the act of 1867 were vacant, and to decide this question we must examine the act of the General Assembly approved fourteenth September, 1868, entitled " an act revising and amending the charter of the City of Jefferson." This act, as its title imports, was intended to *revise and amend* the former charter. Sections one and two are the same in both acts. The only substantial change in section three is as to the time when the Mayor, Aldermen, Treasurer and Controller shall be elected. There is nothing in this section which abolishes or changes the offices themselves. Section four in the new charter expressly recognizes the existence and continuance of the offices, for it provides that the Governor " shall *remove* the present Board of Aldermen and other officers of said city and appoint the Mayor, Treasuer, Controller and Aldermen until the aforesaid officers shall have been elected and qualified in accordance with section three." It is evident the Legislature did not contemplate abolishing the offices, but they simply provided for the removal of the present incumbents

and the appointment of their successors to the offices. In section three they changed the time for holding future elections of officers. Did the thirteenth section repealing the act approved March 8, 1867, entitled "an act incorporating the City of Jefferson" abolish the offices? We think it plain that this clause was only intended to repeal the old charter in so far as its provisions were not incorporated in the new charter. It cannot be supposed that the Legislature intended to declare offices abolished which they had in preceding sections of the same act recognized as existing and had provided for filling.

The offices then not being abolished there were no vacancies. The term of office for which the Mayor, Aldermen, Treasurer and Controller were elected under the charter of 1867 had not expired at the time the appointments were made by the Governor in January, 1869, for the incumbents were entitled to hold their offices until the expiration of the term for which they were elected, and this term extended to a period beyond the time fixed by the new act for the election and induction into office of their successors. Therefore the failure to hold an election on the first Monday of January, 1869, did not vacate the offices and consequently there was no room for appointments. The section four contains the only authority found in the act authorizing the Governor to make appointments. It is nowhere provided in the act that the Governor shall make appointments in case of the failure of an election at any of the stated periods. The section four directs the Governor, unqualifiedly, to remove the Mayor, Aldermen and other officers of the city upon the passage of the act, and appoint others. This authority, of very questionable validity, to say the least of it, the Governor did not exercise, deeming, as we may suppose, that the Legislature had in this instance transcended its proper powers. He only made the appointments after the failure to hold the election on the first Monday of January, 1869, on the ground, as we imagine, of there being vacancies. In our view of the two acts vacancies had not arisen, and we therefore conclude that the appointment of the relator to the office of Mayor of the City of Jefferson is null and without effect.

It is therefore ordered, adjudged and decreed that the judgment of the District Court be annulled, avoided and reversed. It is further ordered that this suit be dismissed at the costs of the relator.

Mr. Justice Howe took no part in this decision.