Express Company vs. Haven.

## No. 246.

### PACIFIC EXPRESS COMPANY vs. W. S. HAVEN.

1. An exception of *lis pendens* cannot prevail, unless the suit set up as a bar, has the *same object* as the one in which the plea is filed.
2. The lessor is bound, from the very nature of his contract. to cause the lessee to be maintained in the peaceable possession of the property during the term of the lease.
3. If the lessee be evicted, the lessor is answerable for the damage and loss he may have sustained by the interruption of the lease.

APPEAL from the First District Court, Parish of Caddo.
Hicks, J.

*Wise & Herndon* for Plaintiff and Appellee:

1. It is the duty of the lessor to maintain the lessee in possession of the leased premises. C. C. 2692.
2. Where a lease of land has not been recorded in the manner required by law for absolute sales of real estate, the lease will have no effect as to purchasers from the lessor. Constitution of 1879, Art. 176; C. C. 2264, 2266, 3347; 3 Ann. 198; 6 Ann. 729; 30 Ann. 436; 33 Ann. 1119.
3. Actual notice will not supply want of registry. 21 Ann. 426; 22 Ann. 402; 29 Ann. 323.
4. If the lessee is evicted the lessor is answerable for the damage and loss sustained. C. C. 2696; 9 Ann. 504; 20 Ann, 73; 37 Ann. 904.

*R. J. Looney* for Defendant and Appellent:

1 *Lis Pendens.* Week vs. Gilmer, 4 Ann. 520; Bischoff vs. Theurer, 8 Ann. 15.

Equities always existing between parties to contracts. R. C. 1964, 1969; 2 Hen. Deg., p. 1020, Sec. 19.

Brokers and principals, factors and principals, sureties and principals are the agents of each others, also vendors and vendees, lessors and lessees. Cource vs. Brandgee, 2 Ann. 132; Pepper vs. Dunlap; 5 Ann. 200.

Notice to agent is notice to principal. 7 Rob. 406; 1 Ann. 80; 2 Ann. 316; 14 Ann. 711.

THIRD PERSONS.

6 La. 148; 6 N. S. 716; 7 R. 44; 2 Ann. 846; 16 Ann. 212; 35 Ann. 830.

Registry was not necessary. though it was made in time. 12 Ann. 699; 6 Ann. 162; 7 Ann. 65; 3 Ann. 587; 11 Ann. 122; 1 R. 135.

No sale without price paid. In addition to the authorities cited we cite. 2 Ann. 265; 5 Ann. 157; 4 Ann. 262; 10 Ann. 408, 575; 14 Ann. 833; 6 Ann. 729.

The opinion of the court was delivered by

WATKINS, J. This action of the Express Company is for the recovery from the defendant, as their lessor, of the sum of $2160, as damages on account of his failure to maintain it in possession of the leased premises, the store No. 310 fronting on Texas avenue, in the city of Shreveport, which damages consist in the difference between the rental the com-

pany had agreed to pay the defendant per month, for a series of five years, and the rental it subsequently contracted to pay the vendees of the property, for the residue of the term subsequent to its alleged eviction, through certain judicial proceedings by said vendees, in vacating the leased premises, after their purchase. That its former lease, from the defendant, was at the rate of $60 per month, for a period of five years, and that its latter lease from his vendees was at the rate of $100 per month for the remainder of the term of the lease of the defendant.

*In limine*, the defendant filed a plea of *lis pendens*, and it having been overruled, he answered and claimed a trial by jury.

On the trial there was a verdict and judgment in favor of the plaintiff for $1363 60, of which $258 60 were declared due, and the remainder payable in monthly instalments of $25. From this judgment both parties have appealed.

## I.

The plea of *lis pendens* was properly overruled. The suit relied upon as constituting the bar had not the same *object* as the instant one. That was a suit by Yonree and Scott, vendees of the defendant, Haven, against the Express Company, plaintiff here, to compel the latter to vacate the premises. In that case defendant appeared and answered that they were tenants of defendant, under their contract of September 14, 1887, and averred that same had been faithfully fulfilled and performed, on the part of said company, and it should be maintained in possession thereunder.

It further averred the obligation of Haven as its lessor to maintain it in possession, and prayed that he be cited as their warrantor, "to defend the possession of the defendant company." In that cause the warrantor, Haven, appeared, by way of an exception to the jurisdiction of the court of the justice of the peace, and averred that "because the issues between the defendants and warrantor were far in excess of $100, same cannot be examined and adjudicated by the court in this form of action." This exception was referred to, and tried with the merits.

He answered and averred the lease to the Express Company, full notice given thereof to the purchasers and plaintiffs, Yonree and Scott, and his sale to them to avoid litigation. He also averred that the plaintiffs were not third persons, and, therefore, they purchased with full notice, and that the Express Company was duly notified of his intention to sell, and warned and requested it to record its lease contract. There was a trial had, and judgment rendered therein, to the effect that the company "depart *forthwith* from the premises" leased, and deliver possession to the plaintiffs as purchasers. The judgment effectually disposed

of the warrantor's plea to the jurisdiction, and virtually disposed of all of the demands of the defendant, and the counter-claims of Haven, warrantor.

It was in that case, and under the issues raised by the warrantor's answer, a question whether Haven had given due notice of the lease of the Express Company, to the purchasers, Yonree and Scott, *prior* to the sale; and full proof of that fact would have furnished a good ground for the justice of the peace to have refused their demand for the vacation of the leased premises.

Had the justice of the peace been satisfied that the purchasers were not third persons, in the sense of the law, he would have possibly turned them out of court, as being without just ground of complaint of the Express Company's occupation of the property. And, in so far as the warrantor's averment that he had given Haven due notice of his anticipated sale, is concerned, it was no answer to the demands of Yonree and Scott, which was simply for Haven's lessee to vacate. This judgment must be accepted as satisfactory to all parties, as it was not appealed from by anyone, and was subsequently, voluntarily executed; and Yonree and Scott executed a new lease to the Express Company.

The Code of Practice defines *lis pendens* to be "another suit being pending between the same parties for the *same object*." C. P. 335.

If the demand of the warrantor be still pending in the justice court,— and this is very problematical,—clearly, it is not "the *same object*" as that involved in this suit. Hence the plea of *lis pendens* was correctly overruled.

## II.

The plaintiff relies upon his eviction of the leased premises, under the operation and effect of the judicial proceedings and decree rendered and just adverted to.

The claim made is that the company wanted to continue its occupancy of this particular piece of property, which was, in the opinion of its officers and mangers, best suited to the prosecution of its business, and in a specially favored locality.

That the act of sale made to Yonree and Scott, contained neither mention or reservation of its rights as lessee, and Haven had violated and broken the terms of his lease contract, and there was no alternative left to the company for the maintenance and protection of its rights of occupancy, but to contract a new lease with the purchasers, *subsequent to the judicial decree*, on the most favorable terms possible.

But the defendant maintains that: First, the neglect of the Express Company to register its contract of lease, notwithstanding it was duly

notified, and urged by him to do so; second, the company's refusal to prosecute an appeal from the judgment in the eviction proceedings; third, its "swift acquiescence in the judgment;" fourth, its neglect to call upon him to furnish it another place equally as good, valuable and convenient; fifth, its positive refusal to accept another place, have had the effect of exonerating him from all liability for the damages claimed.

Finally he claims that $60 per month rent, was all the property was worth, and that the Express Company had contracted to pay Youree and Scott too much. It is unnecessary that we should argue these different propositions separately.

It is perfectly clear that if the company had caused its lease contract to have been seasonably recorded, it would have affected the property in the hands of the purchasers; and, because adequate proof was not made of such registry, in the justice court, it is quite likely the decree to vacate the leased premises was rendered.

The proof on that question furnished us in the transcript, fails to establish timely and sufficient registry, to bind the purchasers. We fail to perceive in what sense Youree and Scott were parties to the *act of lease*, unrecorded as it was, and which was executed long before their acquisition of the property — this lease not being mentioned in the act of sale. While it may be conceded that, through the intermediation of Martin, the broker. they were parties to all the negotiations antecedent, and leading up to the sale, they did not for that reason become parties to the contract of lease. Therefore they obtained a title free of its incumbrance, and acquired the legal right to the possession of the property, and the consequent legal right to dispossess the plaintiff. It is equally clear that the Express Company had a legal right to contract with the purchasers for a *new* lease of the property.

Then, we are to ascertain in what way the rights of the parties to the *original* contract of lease are affected by the sale to Youree and Scott, and the Express Company's dispossession of the leased premises.

Under the textual provisions of the Civil Code "the lessor *is bound*, from the very nature of the contract, and *without any clause to that effect* * * to cause the lessee to be in peaceable possession of the thing, during the continuation of the lease." R. C. C. 2692; 14 Ann. 564; 15 Ann. 321, 323; 17 Ann. 178. (The italics are ours). In the face of this position of affairs, and unequivocal legal requirement, the defendant set in motion negotiations for the sale of the property under lease, to the plaintiff, through a real estate agent, which eventuated in a sale to Youree and Scott. The act of sale contains no reservation of the rights of plaintiff as lessee, yet it does contain a full, and complete re-

servation of the rights of the defendant, as a lessee of a portion of the property, for one year. There may have been something said to the plaintiff in reference to the necessity, or propriety of its having its contract of lease recorded; but this was unreasonably delayed until after the deed had been actually marked filed, by the clerk of court, and it had been deposited in his custody. This was entirely insufficient to shift the responsibility upon the plaintiff, and shield the defendant from the direct and immediate consequences of his voluntary act.

The several causes assigned by the defendant, as exonerating him from pecuniary liability, cannot avail him; for it was quite as much his duty to have prosecuted an appeal from the judgment of eviction, as of the Express Company.

It had a perfect right to accept the situation and acquiesce in the judgment, in order to avoid judicial expulsion. The manager of the company did serve upon the defendant a notice that he must protect him "in the occepancy of the premises," and he was not bound to accept another, at his behest. "If the lessee be evicted, the lessor is answerable for the damage and loss, which he sustained by the interruption of the lease." R. C. C. 2696.

In this instance the lessee lost the use of the premises he had leased, and it found itself constrained to. accept a new lease from its *lessor's vendees* at a higher monthly rental, by $40 per month, i. e., $100 per month instead of $60.

A thorough examination of the record has satisfied us that that was the best possible terms the company could make with the purchasers, and we are not justified in saying it was too much. Then, it is clear, that $40 per month for the residue of the term of five years — taking date from the 1st of April, 1888 — is the amount of damage the company sustained "by the interruption of their lease," and that it is the duty of the defendant to repair it.

The judgment of the court should be amended and increased to the total sum of $2160, as demanded in plaintiff's petition, payable in monthly instalments of forty dollars per month, in lieu of twenty-five.

It is, therefore, ordered and decreed that the judgment appealed from be amended and increased to the sum of $2160, and that of this sum $760 be paid in cash as the amount due, and that the remainder of $1400 be paid in monthly instalments of forty dollars each, during the balance of the term, and that as thus amended the judgment be affirmed with all costs taxed against the defendant and appellant.